RECEIVED

JUN - 8 2010

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| JANELLE ALEXANDER | CIVIL ACTION NO. 08-1570 |
| VERSUS | JUDGE DOHERTY |
| COMMISSIONER OF SOCIAL SECURITY | MAGISTRATE JUDGE HILL |

## RULING

This matter was referred to United States Magistrate Judge C. Michael Hill for Report and Recommendation. After an independent review of the record, including the objections filed herein, this Court concludes the Report and Recommendation of the Magistrate Judge is correct and adopts the findings and conclusions therein as its own, as supplemented herein in response to plaintiff's objections.

### Objection 1

Plaintiff's first objection states as follows: "The Magistrate Judge Inadvertently Failed to Determine Whether the ALJ's Step 4 Finding - That Plaintiff Retained the Ability to Perform Some of Her Past Relevant Work - Was Supported by Substantial Evidence." [Doc. 30, p. 2] Plaintiff argues:

> [T]he denial is not supported by substantial evidence because the ALJ's residual functional capacity finding is contrary to the State Agency's finding that Alexander *could not* perform *any* of her past relevant work. [footnote] 1 Plaintiff, therefore, seeks reversal based upon this Step 4 error, alone. (Tr. 180). (Emphasis added). See *Abshire v. Bowen*, 848 F.2d 638, 641 (5th Cir. 1988)(Rejecting and ALJ's Step 4 finding that plaintiff could perform past relevant work where *State Agency physicians previously found* [as here] *that claimant could not.*).
> ([FN]1 By DDS: "We realize that your condition prevents you from doing *any* of your past work." (Emphasis added)."

1

[Doc. 30, p.3] A review of the briefing to this Court, as well as to the court below, reveals claimant's evidence in support of her argument is that contained at note 1 quoted above - "We realize that your condition prevents you from doing *any* of your past work." (Emphasis added)." [*See also* Doc. 17, p.5, n.4 ("By DDS: 'We realize that your condition prevents you from doing *any* of your past work.' (Tr. 13). (Emphasis added).")]

First, the Court notes no citation has been provided to either this Court or the court below, as to where the statement relied upon is found in the record. While claimant did cite the Magistrate Judge to p.13 of the Administrative transcript, that page does not contain the statement upon which claimant relies.[1] However, plaintiff has provided a copy of the document containing the statement to this Court, by attaching it to her objections. [Doc. 30-1, p.1] A review of that document reveals the statement, upon which claimant *exclusively* relies, has been reproduced by plaintiff in an incomplete fashion, with *no indication* by claimant that her quoted statement is incomplete. The statement *actually* reads as follows: "We realize that your condition prevents you from doing any of your past work, **but it does not prevent you from doing work which requires less physical effort.**" [Id. (emphasis added)] Claimant's counsel in no way indicated he was quoting only a portion of the statement relied upon, and certainly did not indicate the omitted portion of the statement seriously undercut the argument he is making to this Court.[2]

---

[1] Rather, p. 13 contains a portion of the ALJ's analysis of step 5 of the sequential evaluation process for determining whether an individual is disabled. 20 CFR 404.1520(a) and 416.920(a). Presumably, plaintiff is referring the Court to the first paragraph of that page, which discusses the "Physical Residual Functional Capacity Assesment" completed by a State Agency medical consultant on October 10, 2006. A review of that paragraph reveals the ALJ accurately characterized the FCE.

[2] Counsel is reminded of his duty under Rule 3.3 of the La. Rules of Conduct ("Candor Toward the Tribunal"), which prohibits a lawyer from knowingly making a false statement of fact to a tribunal.

2

Second, the Court notes claimant characterizes the case upon which she relies, *Abshire v. Bowen*, 848 F.2d 638, 641 (5th Cir. 1988), as follows: "*Abshire* . . . (Rejecting and [sic] ALJ's Step 4 finding that plaintiff could perform past relevant work where *State Agency physicians previously found* [as here] *that claimant could not*.) Plaintiff's characterization is incorrect. The portion of *Abshire* upon which claimant relies states as follows:

> It is undisputed that Abshire suffers from a serious neck injury. Even the Secretary's own consultative physician, Dr. Webre, stated that Abshire should avoid strenuous neck exertion. Further, in initially denying disability benefits to Abshire, the Department of Health and Human Services found that medical evidence revealed that Abshire had a limited range of motion of his neck, and that Abshire could not perform any jobs that would require frequent looking upward. The Department of Health and Human Services further concluded that "[Abshire] cannot return to his past work as a route salesman as it does require him to look upward quite frequently because of the unloading and loading of the truck, and stocking of the shelves." Moreover, Dr. Rivet, Abshire's treating physician, stated in a letter to a life insurance company only one week prior to the date Abshire applied for disability benefits that Abshire was totally disabled. "The opinions, diagnosis, and medical evidence of a treating physician whose familiarities with the patient's injuries, treatment, and responses over a length of time, should be accorded considerable weight." *Barajas*, 738 F.2d at 644.

The only correct reading of the foregoing paragraph reveals the Fifth Circuit found it was <u>undisputed</u> claimant could not perform "past relevant work" based upon the "State Agency physician," as well as findings of the Department of Health and Human Services and plaintiff's treating physician.

Claimant further argues the partial statement upon which she relies constitutes "expert opinion evidence" pursuant to SSR 96-6p, and "[h]ere, neither the ALJ nor the Magistrate Judge provided regulatory or jurisprudential authority which permitted the ALJ to ignore his own consultant's expert opinion evidence in violation of SSR 96-6p." SSR 96-6p provides in pertinent part:

> 1. Findings of fact made by **State agency medical and psychological consultants and other program physicians and psychologists** regarding the nature and severity

3

> of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review.
>
> 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.

However, the statement upon which claimant relies was not made by a State agency, medical or psychological consultant, or any other program physician or psychologist. Rather, the statement is contained in a "Notice of Disapproved Claims" signed by Ramona Schuenemeyer, Regional Commissioner of the Social Security Administration.

Due to the foregoing, Objection 1 is OVERRULED.

### **Objection 2**

Plaintiff's second objection is as follows: "The Magistrate Judge Misapprehended the Fundamental Legal Principle that the Dictionary of Occupational Titles Does Not Constitute Evidence Similar to Vocational Expert Testimony." [Doc. 30, p.5] In this matter, the ALJ found plaintiff's limitations do not prevent her from performing some of her past jobs, specifically work order technician, bench jewelry technician, and accounting clerk. (Tr. 14-15) Because the ALJ found plaintiff was able to do some of her past work, the analysis should have ended at step four with a finding of not disabled. 20 C.F.R 4904.1520(a)(4)("The sequential evaluation process is a series of five 'steps' that we follow in a set order. If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step. If we cannot find that you are disabled or not disabled at a step, we go on to the next step.") The regulations and Fifth Circuit precedent make clear that when plaintiff is able to do some of her past relevant work a finding of not-disabled is required. *Smith v. Astrue*, 278 Fed.Appx. 395, 398 (5th Cir. 2008) ("The Commissioner found that Smith's medical conditions did not meet or equal a listed impairment (step

three), and that Smith was capable of performing *some* of her past relevant work, including her work as a bus driver (step four). The negative result at step four required a finding of 'not disabled.'")(emphasis added)(citing *Harrel v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)); 20 C.F.R 404.1560(c)(1) ("If we find that your residual functional capacity is not enough to enable you to do *any* of your past relevant work, we will use the same residual functional capacity assessment we used to decide if you could do your past relevant work when we decide if you can adjust to any other work.")(emphasis added). Therefore, the analysis in the fifth step, with which plaintiff takes issue, was not required in order for the ALJ to find that plaintiff is not disabled, and likely should be disregarded in its entirety.

However, even assuming it was proper to proceed to the fifth step, plaintiff has not shown how any errors committed at this step were prejudicial. "As a general rule, where the rights of individuals are affected, an agency must follow its own procedure, even where the internal procedures are more rigorous than otherwise would be required." *See Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981). However, "[p]rocedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)(citing *Carter v. Massey-Ferguson, Inc.*, 716 F.2d 344, 349 (5th Cir. 1983)).

Furthermore, the ALJ's finding at step five that a significant number of jobs exist in the national economy for an individual of the plaintiff's age, education, work experience, and residual functional capacity is supported by substantial evidence. As noted, the step five analysis in this case is atypical, as the ALJ continued on to step five after finding that the plaintiff could do some of her past relevant work. This atypicality is compounded by the fact that the "other work" plaintiff was

5

found to be capable of performing was actually the same work she had performed in the past. The transcript of the hearing reflects this confusion. The ALJ appears to have simultaneously asked the vocational expert whether plaintiff could perform any of her past work (step four) and whether she could perform any work that exists in the national economy (step five):

> Q: I'd ask you to . . . to ascertain whether with these combined limitations this hypothetical individual could perform any type of work in the Louisiana and USA economies. . . . With that hypothetical, what type of work do you feel she could perform, if any, any of her past relevant work or not?

[Tr. 170-71]

Despite these anomalies, the ALJ's finding that significant numbers of jobs exist in the national economy that plaintiff could perform is supported by substantial evidence. Plaintiff's specific argument is that the failure of the vocational expert to provide testimony regarding the incidence or availability of the alternate occupations violates SSR 83-14 and requires a remand to the ALJ to allow the vocational expert to testify regarding the availability of the jobs identified. SSR 83-14 specifies "whenever a vocational resource is used [in a decision applying the medical-vocational rules as a framework] and an individual is found to be not disabled, the determination or decision will include (1) citations of examples of occupations/jobs the person can do functionally and vocationally and (2) a statement of the incidence of such work in the region in which the individual resides or in several regions of the country." The term "vocational resource" is used in SSR 83-14 to refer to both vocational experts and recognized publications, such as the DOT.[3] Contrary to that which plaintiff claims, SSR 83-14 does not require the vocational expert to

---

[3]For example, SSR 83-14 provides:

Use of a vocational resource may be helpful in the evaluation of what appear to be "obvious" types of cases. In more complex situations, the assistance of a vocational resource may be necessary. The publications listed in sections 404.1566 and 416.966 of

disclose such a statement, but rather that the ALJ's decision include such a statement. Of course, whether the vocational expert does disclose such a statement is relevant to the question of whether the ALJ's ruling is supported by substantial evidence. In this matter, the decision of the ALJ states the vocational expert testified that a significant number of jobs exist in the national economy for an individual with the claimant's characteristics, namely the jobs of work order technician, bench jewelry technician, and accounting clerk, and that this information is consistent with the information included in the DOT .[4]

Plaintiff has pointed the Court to no cases that directly control this situation, and the Court has found none.[5] In *Monroe v. Shalala*, 55 F.3d 633, *8 (5th Cir. 1995) the Fifth Circuit recognized there is no Fifth Circuit "case authority on the legal definition of what is a significant number of jobs" in the national economy. The court adopted the reasoning of the Tenth and Sixth circuits in

---

the regulations will be sufficient for relatively simple issues. In more complex cases, a person or persons with specialized knowledge would be helpful. State agencies may use personnel termed vocational consultants or specialists, or they may purchase the services of vocational evaluation workshops. Vocational experts may testify for this purpose at the hearing and Appeals Council levels. In this PPS, the term vocational specialist (VS) describes all vocational resource personnel.

[4]Unlike the Magistrate Judge, this Court does not interpret the ALJ's citation to SSR 00-4p as referring to the following sentence: "The term 'occupation,' as used in the DOT, refers to the collective description of those jobs. Each occupation represents numerous jobs." SSR 00-4p states its purpose is to clarify how conflicts between the DOT and the vocational expert are to be resolved. It is clear from the hearing transcript that there was no conflict between the testimony of the vocational expert and the DOT, as the ALJ required the vocational expert to give DOT numbers for each occupation she cited and she altered her testimony when it conflicted with the DOT. (Tr. 171-75) The court reads the citation to SSR 00-4p as affirming that the vocational expert's testimony is consistent with the information contained in the DOT, which establishes that these three jobs exist in significant numbers.

[5]Plaintiff cites several cases to support her conclusion a remand is necessary to allow the ALJ the opportunity to comply with step five of the analysis. *See Millet v. Schweiker*, 662 F.2d 1199, (5th Cir. 1981); *Rode v. Secretary of Health & Human Services*, C.A. No. 89-2570 (W.D. La 05/09). These cases are inapposite. *Millet* involved a physician testifying as an "unannounced vocational expert"; *Rode* is not binding precedent, cites no Fifth Circuit jurisprudence in support of its holding, and addresses a situation where a vocational expert testified to neither the requirements of the jobs identified, nor their availability.

*Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir.1992) and *Hall v. Bowen*, 837 F.2d 272 (6th Cir.1988), both of which found there is no bright line establishing the number of jobs necessary to constitute a "significant number."[6]

The role of the vocational expert is to help resolve complex problems that can arise when a claimant has limitations that are not purely exertional, and these limitations prevent them from performing the full range of work in the exertional class in which they would normally fall. SSR 83-14 (*see* note 3, *supra*). Because plaintiff was found to be unable to perform the full range of sedentary work, a vocational expert was called. The testimony of the vocational expert was necessary to resolve the question of whether the plaintiff's additional limitations prevented her from performing the jobs of work order technician, bench jewelry technician, and accounting clerk. The vocational expert testified plaintiff's limitations did not prevent her from performing these jobs. Once the issue for which the testimony of the vocational expert was required was resolved, it was reasonable for the ALJ to use the information contained in the DOT, in conjunction with the testimony of the vocational expert, to find these jobs existed in significant numbers in the national economy.[7] While perhaps in a more complex factual situation, such as where the jobs listed by the vocational expert had not previously been performed by the plaintiff and the plaintiff's limitations

---

[6]*See also Denais v. Secretary of Health & Human Servs.*, 820 F.Supp. 278 (W.D.La.1993) (using standard from *Trimiar* and *Hall* to find 1,004 jobs were a significant number of jobs, but claimant effectively rebutted evidence that there were a significant number of jobs she could perform).

[7]Plaintiff also argues "post-hearing use" of the DOT to show significant numbers of the identified jobs is precluded by *Fields v. Bowen*, 805 F.2d 1168 (5th Cir. 1986). However, plaintiff's reliance on *Fields* is misplaced. *Fields* held where a claimant has a non-exertional impairment, use of the DOT in the absence of testimony from a vocational expert is insufficient to show a significant number of jobs exist in the national economy that the claimant can perform, since the DOT is not "other similar evidence." However, here, the ALJ did use vocational expert testimony to determine plaintiff could work as a work order technician, bench jewelry technician, or accounting clerk.

were more severe than in this matter, more would be required of the vocational expert. However, in this matter the Court finds the ALJ's decision was supported by substantial evidence, as the evidence is more than a "scintilla" and is certainly sufficient such that "a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Harris*, 612 F.2d 993, 997 (5th Cir. 1980). Accordingly, the Court finds that even if the ALJ should have proceeded to step five, his finding that significant numbers of the three identified jobs exist in the national economy is supported by substantial evidence.

Due to the foregoing, Objection 2 is OVERRULED

### Conclusion

Due to the foregoing, the Commissioner's decision is AFFIRMED, and this matter is hereby DISMISSED WITH PREJUDICE.

THUS DONE AND SIGNED in Lafayette, Louisiana, this ___8___ day of June, 2010.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE